**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-3213 |
| | ) | |
| WEXFORD HEALTH SOURCE, INC.; | ) | Judge Sharon Johnson Coleman |
| ESTATE OF DR. SALEH OBAISI, | ) | |
| Deceased; and LATANYA WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Johnson brings this 42 U.S.C. § 1983 action against Wexford Health Source, Inc. ("Wexford"), Ghaliah Obaisi, as Independent Executor of the Estate of Saleh Obaisi, M.D. ("Dr. Obaisi"), and physician's assistant Latanya Williams ("PA Williams"). Johnson claims that Dr. Obaisi and PA Williams were deliberately indifferent by failing to provide him with timely medical care for his umbilical hernia. Johnson also asserts a claim against Wexford under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Currently before the Court is defendants' motion for summary judgment. For the reasons discussed below, the Court denies the motion with respect to Dr. Obaisi and PA Williams and grants the motion as to Wexford.

**Background**

The Court relies on the Local Rule 56.1 statements of undisputed material facts and supporting exhibits and construes the facts in the light most favorable to Johnson, the nonmoving party. Johnson is an inmate in the custody of the Illinois Department of Corrections at Stateville Correctional Center ("Stateville"), where he has been incarcerated since 1995 and is serving a natural life sentence. Wexford is a private corporation that was contracted to provide medical services to Stateville inmates. At all relevant times, Dr. Obaisi was employed by Wexford as its Medical

Director and, as a general surgeon, he had skills, knowledge, and training that exceeded other primary care providers. PA Williams was also employed by Wexford. As a physician's assistant, she was required to handle the "sick call" at Stateville, which was the process by which inmates were seen for illnesses and other medical problems. She also performed physical examinations and minor surgical procedures, as well as sometimes covering the urgent care area.

In early 2016, Johnson first felt a "knot" in his abdominal area, which would later be diagnosed as a hernia. The Wexford Medical Guidelines classify hernias as reducible, incarcerated, or strangulated. Reducible hernias "generally pose no medical risk to the patient," incarcerated hernias "are at risk for strangulation and require urgent surgical surveillance," and strangulated hernias "represent a surgical emergency." According to the medical records, PA Williams examined Johnson's abdomen on June 17, 2016 for an umbilical protuberance, which she noted "goes in and out." She diagnosed Johnson with a small, reducible, non-tender umbilical herniation, that is, a hernia that can be manually inserted back into the abdominal cavity. She advised Johnson to continue to observe his condition and to request another appointment if he observed a significant change in the size of the hernia, experienced pain, or his bowel habits changed. Johnson testified that he complained of pain at the June 17 visit and that PA Williams said something like "people live with hernias." PA Williams testified that Johnson did not complain of pain on June 17.

On October 25, 2016, Johnson had a medical visit with Dr. Obaisi, who tried to push the hernia in to Johnson's abdominal cavity but it popped back out, which, according to Johnson, was painful. Johnson requested surgical repair but Dr. Obaisi told him that it was not medically indicated because he was diagnosing him with a reducible small umbilical hernia. He advised Johnson to follow up again in six months. According to Johnson, Dr. Obaisi also stated that hernia patients were not sent out for surgery. On October 27, Johnson filed a grievance stating, inter alia, that he was being denied treatment and that he needed his hernia "cut off."

Johnson was next seen by Dr. Obaisi on April 5, 2017 at which time he was diagnosed with an incarcerated hernia and prescribed an abdominal binder, which is a medical brace with a Velcro closure prescribed generally to support a person's abdomen or lower back. Johnson testified at his deposition that he told Dr. Obaisi at both the 2016 and 2017 visits that the hernia was painful, but Dr. Obaisi never provided him any pain medication. On April 11, 2017, Dr. Steven Ritz, the Corporate Medical Director for Wexford, participated in a collegial review meeting that Dr. Obaisi had called to request a surgical evaluation for Johnson. During the collegial review, Dr. Ritz authorized Johnson to be seen at the University of Illinois at Chicago Medical Center (UIC) for a general surgical evaluation.

On April 12, 2017, PA Williams saw Johnson for his annual physical examination. Her notes from that appointment state that Johnson's hernia was still small and reducible and, at her deposition, she testified that there was consequently no medical need for additional work-up by a doctor. She also testified that Johnson did not complain about hernia pain during his visit with her because, had he done so, she would have documented his complaints in his medical records.

Another collegial review meeting was held on October 10, 2017, during which Wexford approved Johnson for hernia repair surgery at UIC. On October 25, 2017, Johnson underwent a laparoscopic hernia repair surgery. At his deposition, Johnson testified that he complained about hernia pain from the time he first noticed the hernia until he had surgery. He also stated that during that time the hernia grew or changed colors, and the pain worsened. During the year and a half between the time Johnson was first diagnosed with a hernia and when he had the repair surgery, he continued to work unloading trucks and in the kitchen at Stateville. He also stated that he continued to exercise, with his workouts including lifting weights, but he discontinued performing squats and limited his workouts to his upper body.

Johnson has brought this section 1983 action claiming deliberate indifference to his hernia and hernia-related pain. Defendants oppose his claims and move the Court for summary judgment.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one that "might affect the outcome of the suit," and a genuine dispute as to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.*, 477 U.S. at 255 (citation omitted). The party seeking summary judgment bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323.

## Discussion

*Deliberate indifference claims against Dr. Obaisi and PA Williams*

Johnson alleges that Dr. Obaisi and PA Williams were deliberately indifferent to his hernia by delaying his request for surgery and failing to provide him with any medication despite his complaints of pain. Dr. Obaisi and PA Williams argue that Johnson was cared for properly with a conservative course of treatment until he was found to be medically indicated for surgery. Defendants also assert that Johnson has not produced medical evidence to support a finding that the professional judgment of Dr. Obaisi and PA Williams should not be entitled to deference.

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Officials have a duty to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official is deliberately indifferent if he knew or was aware of a substantial risk of harm to an inmate's health, yet disregarded it. *See Goodloe v. Sood*, 947 F.3d 1026, 1030-31 (7th Cir. 2020). More specifically, a prison official is deliberately indifferent when he, "having knowledge of a significant risk to inmate health or safety, administers blatantly inappropriate medical treatment, acts in a manner contrary to the recommendation of specialists, or delays a prisoner's treatment for non-medical reasons, thereby exacerbating his pain and suffering." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (internal quotation marks and citations omitted).

To survive summary judgment on a claim that medical care violated the Eighth Amendment, Johnson must furnish evidence of an "objectively serious medical condition" and that defendants were "deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). An objectively serious medical need is one that a physician has diagnosed as mandating treatment or one "that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (per curiam) (internal quotation marks omitted). As for the subjective component, the inmate must establish that prison officials acted with a "sufficiently culpable state of mind." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Though negligence or inadvertence will not be sufficient to show deliberate indifference, "it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). In other words, "an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate medical care." *Roe*, 631 F.3d at 857.

5

A hernia condition can be an objectively serious medical problem and defendants do not really dispute this element of Johnson's case. *See, e.g.*, *Johnson v. Doughty*, 433 F.3d 1001, 1010, 1012-1014 (7th Cir. 2006); *Heard v. Sheahan*, 253 F.3d 316, 317-18 (7th Cir. 2001). "[F]or some hernias, the chronic pain presents a separate objectively serious condition." *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 521 (7th Cir. 2019) (internal quotations and citation omitted). Further, delaying treatment of a non-life threatening, but painful, condition for nonmedical reasons can constitute deliberate indifference. *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). This is true even if the delay in treatment does not exacerbate the injury. *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). To summarize, if Johnson can show that the surgery, which was ultimately performed, was unnecessarily delayed in the face of worsening symptoms and ongoing complaints of pain, he can establish a claim for deliberate indifference.

The Court finds that Dr. Obaisi and PA Williams are not entitled to summary judgment on Johnson's deliberate-indifference claims. There is a genuine dispute as to whether Johnson complained to them of pain throughout the year and a half between when he first presented with the hernia condition and when he finally obtained surgical repair. *See Anderson*, 477 U.S. at 255. The Court notes that there are no notations in the Stateville medical record, authored by either Dr. Obaisi or PA Williams, recording that Johnson complained about pain during his hernia-related medical visits. Moreover, PA Williams testified that had Johnson told her he was experiencing pain, she would have documented his complaints. Yet Johnson testified that he complained of hernia pain to PA Williams at his June 2016 and April 2017 visits with her and to Dr. Obaisi at the October 2016 and April 2017 visits with him.

Construing the evidence in favor of Johnson, a reasonable jury could find that Dr. Obaisi and PA Williams were deliberately indifferent to Johnson's hernia-related complaints of pain during the period between the June 2016 visit and the October 2017 surgery. *See Wilson*, 932 F.3d at 521

(district court erred in granting judgment as matter of law in defendant's favor because jury could find that defendant was deliberately indifferent during 14-month period between when plaintiff presented with hernia pain and when he was referred for surgery); *see also Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008) ("A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.") Whether Johnson's testimony is believable is ultimately a credibility determination for the jury. *See Wilson*, 932 F.3d at 521 (citing *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996) ("[T]his is a case about pain . . . the textbook example of a uniquely subjective experience.")); *see also Rasho v. Elyea*, 856 F.3d 469, 477 (7th Cir. 2017) (in evaluating evidence in the light most favorable to the non-moving party, the Court must refrain from making credibility determinations or weighing evidence). Defendants are left to contradict Johnson's testimony at trial, by challenging his testimony through the crucible of cross examination and the presentation of their own evidence. Because the Court concludes that the individual defendants have not met their burden of establishing the lack of genuine disputes as to a material fact, *see Celotex*, 477 U.S. at 323, their motion for summary judgment on the deliberate-indifference claims is denied.

*Monell claim against Wexford*

Wexford moves for summary judgment on Johnson's claim that it had a cost-cutting policy to not send out patients for hernia repair surgery. Although section 1983 has been interpreted to bar *respondeat superior* liability, a defendant like Wexford can be held liable if it has a policy or practice that causes a constitutional violation. *Monell*, 436 U.S. at 691; *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (observing that *Monell* extends to private entities like Wexford). To prevail on his *Monell* claim, Johnson needs to show that Wexford's policy, practice, or custom caused a constitutional violation. *Whiting v. Wexford Health Source, Inc.*, 839 F.3d 658, 664 (7th Cir.

7

2016).  "An official policy or custom may be established by means of an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation."  *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *Waters v. City of Chi.*, 580 F.3d 575, 581 (7th Cir. 2009).  Johnson must show a causal connection between his injury and Wexford's official custom or policy.  *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014).

Here, the evidence does not establish that Wexford had a policy or custom of denying offsite surgical intervention for hernias where medically indicated.  PA Williams flatly denied, under oath, that Wexford had any cost-cutting or cost-savings policies.  Further, Wexford's written policies provide guidance as to when surgical intervention is necessary for an inmate presenting with a hernia.  Johnson has not produced any evidence of a widespread custom or practice beyond the circumstances of his own umbilical hernia condition.  One instance of purported deliberate indifference is not enough to support *Monell* liability resting on a practice or policy.  *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance, or even three...." (citations omitted)).  At minimum, Johnson must show that "there is a policy at issue rather than a random event."  *Thomas*, 604 F.3d at 303.  Yet, he has presented evidence only of what he deems less-than-acceptable care for his hernia condition.  He has not offered evidence supporting the inference that what occurred was the result of an express policy rather than an isolated incident.

To raise a triable issue of fact, Johnson was required to set forth some evidence that it was the policy of Wexford to not send out patients for hernias, *see Celotex*, 477 U.S. at 322.  The Court finds that Johnson has not done so, and that a reasonable jury could not conclude that Wexford had

such a blanket policy. *See Heard v. Tilden*, 774 Fed. Appx. 985, 989 (7th Cir. 2019) (summary judgment in favor of Wexford affirmed where the court held that a reasonable jury could not conclude from the record that Wexford maintained a blanket policy of denying non-emergency hernia surgery); *see also Wilson*, 932 F.3d at 521-22 (Wexford entitled to judgment as a matter of law based on the fact that its hernia policy--which the court found was not a flat prohibition against surgical intervention for hernia--was not the moving force behind plaintiff's alleged Eighth Amendment violation). Wexford is entitled to summary judgment in its favor as to the *Monell* claim.

### Conclusion

For the foregoing reasons, defendants' motion for summary judgment [75] is granted in part and denied in part. A status hearing is set for 9:30 a.m. on July 6, 2020.

**IT IS SO ORDERED.**

Date: 5/5/2020

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge